IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01721-PAB-CBS

JARED WELSH,

    Plaintiff,

v.

NEIL BISHOP (personal capacity),

    Defendant.

---

**ORDER**

---

This matter is before the Court on the Motion[] to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) [Docket No. 45] filed by defendant Neil Bishop.

**I. BACKGROUND**[1]

Plaintiff was convicted in a Mesa County, Colorado criminal case and sentenced to incarceration at the Mesa County Community Corrections Facility ("ComCor"), where he arrived on March 4, 2012. Docket No. 44 at 2, ¶ 6. Mr. Bishop was plaintiff's case manager at ComCor. *Id.* at 2, ¶ 4. As a condition of his probation and placement at ComCor, plaintiff was required to work. *Id.* at 3, ¶ 7. Plaintiff commuted to and from work by bicycle and was required to follow a pre-approved route whenever he left the ComCor facility. *Id.* Plaintiff was not permitted to leave the facility to see a physician

---

[1]The following factual allegations are taken from plaintiff's Amended Complaint [Docket No. 44]. For purposes of the present motion, plaintiff's factual allegations are presumed true unless, as noted herein, they are conclusory. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) ("conclusory and formulaic recitations" of the elements "are insufficient to survive a motion to dismiss").

without permission from ComCor staff. *Id.*

On July 5, 2012, plaintiff received permission to search for a second job. *Id.* While coming down a hill on his bicycle, the bicycle's front tire malfunctioned, causing plaintiff to fly over the handlebars of his bike. *Id.* He landed on the street, suffering a broken thumb on his right hand and ligament damage to both hands. *Id.* Plaintiff managed to return to the ComCor facility and checked in with Tracie Clampitt, a ComCor employee. *Id.* Plaintiff's clothing was torn, he had abrasions on his knee, and his right arm was swollen. *Id.* Ms. Clampitt gave plaintiff ibuprofen, but refused to give him permission to seek medical attention. *Id.* at 3-4, ¶ 7. Ms. Clampitt demanded that plaintiff produce paperwork proving that he had applied for a job that day. *Id.*

Over the next few weeks, plaintiff was in increasing pain and his right arm became swollen and discolored. *Id.* at 4, ¶ 8. Plaintiff repeatedly asked for permission from Mr. Bishop to seek medical attention, but Mr. Bishop denied plaintiff's requests. *Id.* Mr. Bishop ordered plaintiff to continue riding his bike to and from work and refused to assign plaintiff to a bottom bunk. *Id.* Plaintiff claims that his condition made it difficult to make his bed. *Id.* Mr. Bishop "wrote up" plaintiff for not properly making his bed. *Id.* In August, Mr. Bishop was ordered by his supervisors to permit plaintiff to leave the ComCor facility in order to obtain medical care. *Id.* Plaintiff received medical treatment, but permanently lost 60% of extension in his right wrist. *Id.* Plaintiff claims that the delay in receiving medical care caused the permanent damage to his wrist. *Id.*

In October 2012, plaintiff missed a medical appointment because Mr. Bishop intentionally or recklessly failed to place the appointment in the ComCor computer

system before leaving for vacation. *Id.* at 5, ¶ 9. Plaintiff was unable to reschedule the appointment for several weeks. Plaintiff claims that Mr. Bishop did not want plaintiff to obtain medical care for his broken wrist. *Id.*

Plaintiff also claims that ComCor managers Kyle Merriman, Beth Torgersen, and Michelle Cooley were responsible for ensuring that all inmates were adequately fed each day. *Id.* at 6, ¶ 11. Plaintiff claims that, upon first arriving at ComCor, he was regularly denied access to food due to a flaw in ComCor policy. *Id.* at 5-6, ¶ 10.

On June 30, 2013, plaintiff filed a complaint, Docket No. 1, and, on April 2, 2014, plaintiff filed the Amended Complaint. Docket No. 44. Plaintiff's lone remaining claim[2] for relief under 42 U.S.C. § 1983 alleges that Mr. Bishop in his individual capacity denied plaintiff access to medical care in violation of the Eighth Amendment. *Id.* at 8, ¶ 12.[3]

On April 16, 2014, Mr. Bishop filed the present motion. Docket No. 45. Mr. Bishop argues that plaintiff fails to state a claim against him and that Mr. Bishop is entitled to qualified immunity. *Id.* at 7-10.

---

[2]Plaintiff's second claim alleged that Kyle Merriman, Beth Torgersen, and Michelle Cooley in their individual capacities failed to ensure that plaintiff was provided with adequate food and nutrition in violation of the Eighth Amendment. *Id.* at 8-9, ¶ 13. However, on February 13, 2015, Mr. Merriman, Ms. Torgerson, and Ms. Cooley were dismissed from this case without prejudice. Docket No. 57.

[3]In addition to an Eighth Amendment violation, plaintiff's first claim for relief alleges that Mr. Bishop violated "the Fourteenth Amendment guarantee of substantive due process." Docket No. 44 at 8. However, plaintiff does not appear to allege a substantive due process claim. Thus, the Court construes plaintiff's complaint as alleging only Eighth Amendment violations.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though the modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted). Where, as here, a defendant invokes the doctrine of qualified immunity, the plaintiff is not subject to a heightened pleading requirement. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) ("we apply the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally" (quotations omitted)).[4]

## III. ANALYSIS

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("The Eighth Amendment,

---

[4]Although Mr. Bishop's motion is styled as seeking dismissal under Rule 12(b)(1) and Rule 12(b)(6), Mr. Bishop does not otherwise cite Rule 12(b)(1) or argue that the Court lacks subject matter jurisdiction over plaintiff's claims. Thus, the Court finds no reason to recite or apply the Rule 12(b)(1) standard.

as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199 (1989))). "The analysis [of an Eighth Amendment claim] should not be based on 'a court's idea of how best to operate a detention facility,'" but should reflect "the evolving standards of decency that mark the progress of a maturing society," which the Tenth Circuit has characterized as a "lofty standard." *DeSpain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981)). To prevail on his claim that Mr. Bishop violated the Eighth Amendment, plaintiff must show that (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection and (2) defendant was subjectively aware of a substantial risk to plaintiff's health or safety and acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

A medical need is sufficiently serious so as to satisfy the objective component "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering . . . ." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). "Where a prisoner claims that harm was caused by a delay in medical treatment, he must 'show that the delay resulted in substantial harm.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Thus, the objective

component "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

With respect to the subjective component, the Eighth Amendment does not reach a prison official's conduct unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Verdecia v. Adams*, 327 F.3d 1171, 1175-76 (10th Cir. 2003) ("Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." (internal citations omitted)). An action unaccompanied by a subjective awareness of an unreasonable risk of harm does not constitute "punishment" within the meaning of the Eighth Amendment. *Farmer*, 511 U.S. at 837-38. A prison official must be subjectively aware of the specific harm claimed by the prisoner and not simply aware that harm, in a general sense, could occur. *Martinez*, 563 F.3d at 1089. However, a court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."). The negligent conduct of a prison official is, in

all cases, insufficient to rise to the level of deliberate indifference. *Farmer*, 511 U.S. at 835 ("Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety" (quotations omitted)).

Plaintiff's claim against Mr. Bishop appears to be made up of three courses of conduct: (1) Mr. Bishop's refusal to permit plaintiff to obtain initial medical assistance for his injured arm and hand, (2) Mr. Bishop's refusal to accommodate plaintiff's injuries, and (3) Mr. Bishop's failure to enter plaintiff's follow-up medical appointment in the ComCor computer system. Docket No. 44 at 4-5, ¶¶ 8-9. The Court will consider each aspect of plaintiff's claim in turn.

### A. Initial Medical Assistance

Plaintiff claims that, in the weeks following his accident, Mr. Bishop did not authorize plaintiff to leave the ComCor facility to obtain medical care for his injured hand and wrist. Docket No. 44 at 4-5, ¶ 8. In challenging the objective component, Mr. Bishop argues that, because Mr. Bishop was not aware at the relevant time that plaintiff had a broken bone or was at risk for permanent damage, plaintiff's injury does not rise to the level of sufficiently serious. Docket No. 47 at 2; Docket No. 45 at 8. Mr. Bishop misunderstands the objective element. The objective component is not limited to "the symptoms presented at the time the prison employee has contact with the prisoner." *Mata*, 427 F.3d at 753; *see also Martinez*, 563 F.3d at 1089 (noting that the symptoms actually displayed by the prisoner are directly relevant to the subjective component). Rather, "[o]nce the prisoner selects the harm, . . . the focus of the objective prong should be solely on whether that harm is sufficiently serious." *Mata*, 427 F.3d at 753.

Only then is it appropriate to turn to the subjective prong, where the inquiry revolves around the symptoms presented to the prison employee. *Id.* Thus, Mr. Bishop's argument is without merit.

Plaintiff argues that the continued lack of treatment of a broken bone in his hand and a permanent loss of movement in his right wrist is sufficiently serious so as to satisfy this element. Docket No. 46 at 6. The Court agrees. Plaintiff's amended complaint alleges that he suffered a broken bone in his right hand. Docket No. 44 at 3-4, ¶¶ 7-8. This condition was not timely treated by a physician, a delay which caused the loss of "60% extension of his right wrist." *Id.* This injury is sufficiently serious to satisfy the objective component. *Cf. Mata*, 427 F.3d at 755.

The Court turns to the subjective component. Although Mr. Bishop is not himself a medical professional, the Tenth Circuit has recognized that conduct constituting deliberate indifference may arise in the form of "a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). In *Mata*, an inmate reported to a nurse that she was suffering from severe chest pain. 427 F.3d at 755. In response, a prison nurse refused to administer first aid or summon medical assistance. *Id.* The Tenth Circuit held that the nurse exhibited deliberate indifference because she was aware that the inmate was in severe pain, but "refused to perform her gatekeeping role . . . by not seeking a medical evaluation for [the inmate]." *Id.* at 756. Here, there is no indication that medical care was available at the ComCor facility and the amended complaint alleges that plaintiff could not leave the facility to

see a physician without prior permission from ComCor staff. Docket No. 44 at 3, ¶ 7. Plaintiff alleges that Mr. Bishop had the authority to grant such permission. *Id.* at 4, ¶ 8. Thus, sufficient facts exist to conclude that Mr. Bishop was in a gatekeeper role with regard to plaintiff's ability to seek medical care. *See Self*, 439 F.3d at 1232.

Plaintiff first argues that the risk of harm was obvious because, when he was first injured, his "clothing was torn, he had abrasions on his knee and his right arm was swelling." Docket No. 46 at 5. However, as defendant points out, the amended complaint alleges that plaintiff made contact with Ms. Clampitt immediately after his injury and Ms. Clampitt initially refused plaintiff's requests to seek medical attention. Docket No. 44 at 3-4, ¶ 7. Plaintiff also argues that Mr. Bishop demanded that plaintiff produce certain paperwork relevant to his whereabouts the day of the accident, Docket No. 46 at 5, but no such allegation appears in the amended complaint. *See* Docket No. 44 at 3-4, ¶ 7. The amended complaint does not allege that Mr. Bishop had any contact with plaintiff on the night of his accident; rather, the amended complaint alleges that Mr. Bishop's denial of medical care occurred "[o]ver the following weeks." *Id.* at 4, ¶ 8. Thus, to the extent plaintiff's first claim for relief is based upon any conduct by Mr. Bishop on the day of plaintiff's accident, plaintiff has failed to state a claim.

However, in the weeks following his accident, plaintiff repeatedly asked Mr. Bishop for permission to obtain medical care, from which it is plausible to infer that plaintiff informed Mr. Bishop of the reasons why he was seeking medical attention, namely, that plaintiff "was in increasing pain and distress as his right arm became swollen and discolored." *Id.* at 4, ¶ 8. The allegations that Mr. Bishop eventually "notified his supervisors regarding the Plaintiff's condition" further support an inference

that Mr. Bishop was aware that plaintiff was in pain and suffered from a swollen and discolored arm and communicated this information to his superiors. *Id.* Although Mr. Bishop may eventually establish that "the obvious escaped him and avoid liability," the amended complaint sufficiently alleges that Mr. Bishop was aware of the substantial risk that plaintiff required medical treatment for his hand and arm. *See Self*, 439 F.3d at 1231 (quotation omitted). As a result, plaintiff states a claim that Mr. Bishop consciously disregarded such a risk by refusing to allow plaintiff to seek medical attention for multiple weeks, a delay in medical treatment which caused plaintiff permanent injury. *See Martinez*, 563 F.3d at 1089.

Mr. Bishop argues that he could not have been aware of any risk because the amended complaint "alleges that Plaintiff asked to obtain medical care; it does not say that Bishop was advised of the symptoms or extent of the claimed medical need." Docket No. 45 at 8. However, the possibility that plaintiff never revealed to Mr. Bishop the reasons why he sought medical attention or the possibility that Mr. Bishop was unaware of plaintiff's condition while reporting plaintiff's condition to his superiors are not, as Mr. Bishop claims, "more likely explanations" that would otherwise render plaintiff's allegations implausible. *See Iqbal*, 556 U.S. at 681. Similarly, although plaintiff continued to work for several weeks in spite of his condition, *see* Docket No. 45 at 8, this fact does not, by itself, overcome the inference that Mr. Bishop was aware of a substantial risk that plaintiff required medical attention.

Mr. Bishop appears to contend that, because he did not know that plaintiff's condition would result in permanent injury, the subjective component is not satisfied. Docket No. 47 at 3. However, plaintiff has sufficiently stated a claim that Mr. Bishop

consciously disregarded the risk of the claimed harm, namely, the risk that plaintiff required medical treatment for his hand and arm.  See *Martinez*, 563 F.3d at 1089-90.

For the foregoing reasons, plaintiff has stated a claim that, in the weeks following plaintiff's injury, Mr. Bishop denied plaintiff access to initial medical care for injuries to his arm and hand in violation of the Eighth Amendment.

### B.  Refusal to Accommodate Plaintiff's Condition

To the extent plaintiff's Eighth Amendment claim against Mr. Bishop is based upon the allegations that "Bishop refused to reassign the plaintiff to a bottom bunk" and that "Bishop wrote up the Plaintiff on numerous occasions for not properly making up his bed," plaintiff fails to state a claim.  The allegations that it was "difficult and painful for the Plaintiff to climb into his upper bunk to sleep" or "difficult and painful" for plaintiff to make his bed, Docket No. 44 at 4, ¶ 8, do not, by themselves, establish that the alleged harms rise to the level of "sufficiently serious" so as to satisfy the objective component.  See *Martinez*, 563 F.3d at 1088.  Plaintiff does not establish that Mr. Bishop acted in conscious disregard of a risk that sleeping in a top bunk or making a bed was "difficult and painful."  As a result, plaintiff fails to satisfy the subjective component.  Thus, plaintiff fails to state a claim that Mr. Bishop violated the Eighth Amendment by refusing to assign plaintiff a bottom bunk and issuing plaintiff writeups for failing to make his bed.

### C.  Delay in Follow-Up Medical Care

Plaintiff alleges that, before leaving on vacation, Mr. Bishop intentionally or recklessly failed to enter plaintiff's follow-up medical appointment in the ComCor

computer system. Docket No. 44 at 5, ¶ 9. Plaintiff claims that this action resulted in him being denied follow-up treatment for his "broken wrist." *Id.* Plaintiff claims that Mr. Bishop "did not want the Plaintiff to be able to obtain medical care for his broken wrist." *Id.* Plaintiff alleges that he rescheduled the appointment several weeks later, but does not explain why such a delay is sufficiently serious so as to rise to the level of an Eighth Amendment violation. *See id.* However, even assuming that plaintiff satisfied the objective component, plaintiff fails to establish that Mr. Bishop acted with deliberate indifference. First, plaintiff's allegations that Mr. Bishop acted "intentionally or recklessly" are legal conclusions, which are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678. Second, plaintiff does not explain the circumstances under which he asked Mr. Bishop for permission, including what plaintiff told Mr. Bishop regarding the nature of the appointment or the date on which he asked for permission. Absent supporting facts, the allegation that Mr. Bishop "knew" that plaintiff needed follow-up medical care is a mere conclusory statement. *Id.* As a result, the amended complaint contains no factual allegations suggesting that Mr. Bishop's failure to enter permission into the ComCor computer system was anything more than negligent. *See Farmer*, 511 U.S. at 835.

Plaintiff's lone argument on this aspect of her claim is that the amended complaint places Mr. Bishop "on notice that he was sued for his reckless and malicious conduct -- not mere negligence." Docket No. 46 at 4. Plaintiff's argument is without merit. Because plaintiff's allegations do not state a "plausible claim for relief," this aspect of his claim cannot survive a motion to dismiss, regardless of whether Mr.

Bishop has adequate notice of the claims against him. See *Iqbal*, 556 U.S. at 679.

### D. Qualified Immunity

Mr. Bishop invokes the doctrine of qualified immunity in response to plaintiff's claims against him. The doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity provides a defense to trial and the other burdens of litigation such as discovery, rather than just liability. See *Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Therefore, a court is to resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987).

Because Mr. Bishop asserts the qualified immunity defense, the burden shifts to plaintiff to show that (1) Mr. Bishop's conduct violated a specific constitutional right and (2) the constitutional right allegedly violated was clearly established at the time of the conduct at issue. *Pearson*, 555 U.S. at 231; *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). Plaintiff must satisfy both prongs of this two-part test in order to survive the qualified immunity defense and the Court may consider the two prongs of the test in any order. *Pearson*, 555 U.S. at 236.

Because plaintiff adequately alleges a violation of the Eighth Amendment with respect to his claim that Mr. Bishop denied plaintiff access to initial medical care, plaintiff has satisfied the first prong of the qualified immunity defense. See *Robbins*,

519 F.3d at 1249.  The Court therefore turns to the question of whether such a right is clearly established.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Casey v. City of Federal Heights,* 509 F.3d 1278, 1283-84 (10th Cir. 2007) (quoting *Saucier,* 533 U.S. at 202); *see, e.g.*, *Al-Turki*, 762 F.3d at 1195 ("'Whether a delay in providing medical treatment has negatively affected a plaintiff's well-being is an assessment that is made in hindsight, so it cannot affect an officer's initial decision to seek treatment for an inmate.'" (quoting *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007)).

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits."  *Gann v. Cline,* 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake,* 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).  However, as the Tenth Circuit has pointed out, the "difficult part of this inquiry is identifying the level of generality at which the constitutional right must be 'clearly established.'"  *Casey*, 509 F.3d at 1284.  As a result, the Tenth Circuit employs a "sliding scale" in identifying clearly established law: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  *Id.* (quoting *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004)).  "As long as the unlawfulness of the [defendant's] actions was 'apparent' 'in light of pre-existing law,' then qualified immunity is inappropriate."  *Estate of Booker v. Gomez*, 745 F.3d 405, 433-34 (10th Cir. 2014) (quoting *Hope v.*

*Pelzer*, 536 U.S. 730, 739 (2002)).

Plaintiff's brief cites *Sealock*, which recognized that deliberate indifference occurs when a prison official prevents an inmate "from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment." 218 F.3d at 1211; *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (holding that deliberate indifference can be manifested "by prison guards in intentionally denying or delaying access to medical care"); *Mata*, 427 F.3d at 758. Thus, it is clearly established in the Tenth Circuit that, when a prison official serves as a gatekeeper to medical care, the *complete* failure to fulfill that role is a constitutional violation. *See Mata*, 427 F.3d at 758*; see also Ashcroft v. al-Kidd*, --- U.S. ---, 131 S.Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *Stanton v. Sims*, --- U.S. ---, 134 S.Ct. 3, 5 (2013) (same).

As discussed above, a plausible inference exists that Mr. Bishop was aware of plaintiff's condition in the weeks following plaintiff's accident. A reasonable person in Mr. Bishop's position as a gatekeeper to medical care would know that the complete failure to permit plaintiff access to medical care for multiple weeks was a constitutional violation. Despite Mr. Bishop's argument to the contrary, factual novelty alone will not automatically provide a state official with the protections of qualified immunity. *See Casey,* 509 F.3d at 1284 (noting that in the Fourth Amendment context, "there will almost never be a previously published opinion involving exactly the same circumstances"). Here, the unlawfulness of Mr. Bishop's complete refusal to fulfill his

role as a gatekeeper during the claimed time period was apparent and, given Tenth Circuit precedent on this issue, Mr. Bishop's alleged conduct was sufficiently egregious so as to place him on fair notice that such conduct violated clearly established law. *See Casey*, 509 F.3d at 1284. As a result, Mr. Bishop is not entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Mr. Bishop's Motion[] to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) [Docket No. 45] is **GRANTED** in part and **DENIED** in part as indicated in this order.

DATED March 9, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge